# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

**CIVIL ACTION NO. 11-42-DLB**

REBECCA AND CHAD EMODY                                             PLAINTIFFS

VS.                  **MEMORANDUM ORDER AND OPINION**

ROY AND LEANN MANNING, et al.                              DEFENDANTS

\* \* \* \* \* \* \* \*

In their second amended complaint, Plaintiffs Rebecca and Chad Emody bring a claim for damages under 42 U.S.C. § 1983 and pendent state-law claims of negligence and creation of a nuisance against Defendant Boone County. (Doc. # 23).[1] These claims arise out of Boone County's alleged failure to maintain a storm water culvert running adjacent to Plaintiffs' property in Boone County. Plaintiffs also seek injunctive relief ordering Boone County to properly maintain the water culvert. Boone County filed a motion to dismiss these claims (Doc. # 24), which has been fully briefed by the parties (Docs. # 25, 28). Plaintiffs subsequently filed a motion for leave to amend their second amended complaint (Doc. # 31), which has also been fully briefed (Docs. # 33, 34). Both motions are ripe for review. For the reasons stated herein, Defendant Boone County's dismissal motion is **granted** and Plaintiffs' motion for leave to file a third amended complaint is **denied**.

---

[1] Plaintiffs also bring claims against the prior homeowners, Roy and Leann Manning. Those claims are not relevant to the matters currently before the Court.

1

## I. BACKGROUND

Plaintiffs Rebecca and Chad Emody purchased real property located in Boone County, Kentucky, from Defendants Roy and Leann Manning in 2008. (Doc. # 23, ¶ 5). A storm water culvert operated by Defendant Boone County runs adjacent to that property. According to the complaint, the culvert overflowed on numerous occasions causing damage to Plaintiffs' real and personal property. Plaintiffs allege that the County had notice that the culvert routinely flooded, but failed to maintain and improve the culvert to prevent further flooding and resulting property damage.

Plaintiffs filed their initial complaint on March 8, 2011 (Doc. # 1), and subsequently filed two amended complaints (Docs. # 15, 23). In their Second Amended Complaint, Plaintiffs bring a claim against Boone County under 42 U.S.C. § 1983 alleging that Boone County "has a duty under Kentucky law to maintain storm water culverts," and that it "breached its duty to the Plaintiffs . . . by failing to maintain or take any corrective action . . . to prevent flooding . . . and damages." (Doc. # 23, ¶¶ 29, 35). Plaintiffs also assert pendent state-law claims of common law negligence and creation of a nuisance against Boone County. (*Id.* ¶¶ 39-48). Ultimately, Plaintiffs seek compensation for damage to their real and personal property as well as injunctive relief against Boone County.

Defendant Boone County filed a motion to dismiss all claims against it in Plaintiffs' Second Amended Complaint (Doc. # 24). Boone County argues that Plaintiffs have failed to state a claim upon which relief may be granted because § 1983 does not provide a remedy for violations of state-law torts including negligence. Additionally, Boone County argues that any state-law claims against it must be dismissed on the basis of sovereign immunity.

Plaintiffs then filed a Motion for Leave to Amend their Second Amended Complaint to bring § 1983 claims against Boone County and county officials alleging a violation of their rights under the Clean Water Act ("CWA") and the National Flood Insurance Program ("NFIP"), which is part of the National Flood Insurance Act ("NFIA"). Boone County argues that these amendments would be futile and, thus, Plaintiffs' Motion for Leave to Amend should be denied.

## II.  ANALYSIS

**A.  Because the Proposed Amendments Would be Futile, Leave to Amend the Second Amended Complaint is Denied.**

Federal Rule of Civil Procedure 15(a)(2) requires courts to "freely give leave when justice so requires." "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. United States Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

Plaintiffs propose that their third amended complaint will bring § 1983 actions against Defendant Boone County and several named county officials for violating their rights under the CWA and the NFIA. Accordingly, the Court must determine whether an action brought under § 1983 for alleged violations of the CWA or NFIA would survive a Rule 12(b)(6) motion to dismiss.

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In making a 12(b)(6) determination, the court must "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs." *Louisville/Jefferson County Metro Government v. Hotels.com, L.P.*, 590 F.3d 381, 384 (6th Cir. 2009) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). The complaint must contain "either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). In addition, the factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). "If the 'complaint does not contain any factual allegations sufficient to plausibly suggest' each essential element of the averred violation, it does not contain enough 'factual content to nudge [the claim] across the line from conceivable to plausible' and must be dismissed." *Green v. Nicholas Cnty. Sch. Dist.*, 756 F. Supp. 2d 828, 831 (E.D. Ky. 2010) (quoting *Iqbal*, 129 S.Ct. at 1953).

"To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) the

defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

This case also requires the Court to consider two exceptions where § 1983 will not redress alleged statutory violations. First, a § 1983 claim must be dismissed if Congress foreclosed the private enforcement of the statute conferring the right. *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28 (1981). Second, § 1983 will not provide redress for statutory violations if the statute does not create an enforceable "right." *Id.*

>  **1. A § 1983 claim for alleged violations of the CWA is not viable because the Supreme Court has specifically held Congress foreclosed a § 1983 remedy for violations of the CWA**.

A § 1983 claim against Boone County and named county officials for alleged violations of the CWA cannot survive a Rule 12(b)(6) motion. Plaintiffs allege that Boone County Engineer Greg Sketch, acting under the color of Kentucky law, violated their rights secured by the CWA by allowing raw sewage and pollutants from a stream to constantly invade Plaintiffs' private property. (Doc. # 31, at 7). However, Plaintiffs' argument fails to recognize clear Supreme Court precedent holding that Congress foreclosed a § 1983 remedy for alleged violations of the CWA.

In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981), the Supreme Court considered whether the CWA created an implied right of action and also whether a § 1983 suit may be premised on an alleged violation of the CWA. The Court found that the CWA contains "unusually elaborate enforcement provisions," including a citizen-suit provision that allows citizens to sue for injunctive relief after giving 60 days' notice to potential defendants. *Id*. at 13-14. Because the Act provides

5

"so many specific statutory remedies, including the . . . citizen-suit provision[ ]," the Court concluded that Congress did not intend to create an implied private action arising out of the Act, nor did it intend for § 1983 to provide a remedy for alleged violations of the Act. *Id*. at 18-20.

Pursuant to the Supreme Court's decision in *Middlesex County*, it would be futile to grant Plaintiffs' motion for leave to amend their complaint because they are not entitled to relief under § 1983 for alleged violations of the CWA. Their sole remedy against Boone County is under the citizen-suit provision of the CWA, if Boone County's alleged actions amount to a violation of the Act at all. Therefore, to the extent Plaintiffs wish to assert a § 1983 claim for alleged violations of the CWA, Plaintiffs' motion for leave to amend their second amended complaint is denied

**2. A § 1983 claim for alleged violations of the NFIA is not viable because the Act, particularly 42 U.S.C. § 4102, does not create individual rights that may be enforced through § 1983**.

The Court now turns to whether Plaintiffs may bring a § 1983 action against Defendant Boone County and Boone County Chief Building Inspector Mark Martin for alleged violations of the NFIA. Plaintiffs ask the Court to decide whether a county and county officials are liable in damages under § 1983 for violating the federal rights and protections allegedly afforded to homeowners by the NFIA. This question turns on whether particular provisions of the NFIA create individual rights that may be enforced through § 1983.

In *Gonzaga University v. Doe*, the Supreme Court recognized that "whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved

6

in determining whether a private right of action can be implied from a particular statute." 536 U.S. 273, 283 (2002) (internal quotations and citations omitted). A plaintiff suing under an implied right of action theory must show that in enacting the statute, Congress intended to create both a private right and a private remedy. *Id.* However, a plaintiff suing under § 1983 does not have the burden of showing an intent to create a private remedy "because § 1983 generally supplies a remedy for the vindication of rights secured by federal statute." *Id.* The inquiries do however overlap in that the court must determine whether Congress intended to create a federal right. *Id.* If Congress did not intend to create a federal right, there can be no implied right of action or no suit brought under § 1983. *Id.*

For the purpose of determining whether a federal right exists in the context of § 1983, the court's role "should . . . not differ from its role in discerning whether personal rights exist in the implied right of action context." *Id.* Accordingly, the court must determine "whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id.* This requires the court to examine the statute for "rights-creating" language, meaning some clear and unambiguous term expressing congressional intent to create new rights. *Id.* at 287, 290. Such "rights-creating" language "must be phrased in terms of the person benefitted" in order for the statute to create rights. *Id.* at 274.

The *Gonzaga* Court applied its newly articulated test to particular provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA") to determine whether violations of those provisions were actionable under § 1983. *Id.* at 276. In *Gonzaga*, the plaintiff sued the university and a university employee under § 1983, alleging that the

7

defendants violated rights conferred by FERPA, 28 U.S.C. § 1232g,[2] because the employee disclosed plaintiff's private matters without proper consent. *Id.* The Court ultimately held that FERPA's nondisclosure provisions did not confer enforceable rights because they "lack the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Id.* at 276, 287. Moreover, the nondisclosure provisions "speak only in terms of institutional policy and practice, not individual instances of disclosure." *Id.* at 288. Therefore, "they have an aggregate focus, they are not concerned with whether the needs of any particular person are satisfied, and they cannot give rise to individual rights." *Id.* (internal citations and quotations omitted).

Here, without identifying a particular provision within the NFIA, Plaintiffs generally assert that Boone County violated their rights under the Act by failing to prevent "building in the flood plain areas and alteration of bodies of water that are flood prone or in the flood plain without permission from the local government." (Doc. # 31, at 11). According to Plaintiffs, these "rights" are derived from regulations promulgated by the Administrator of the Federal Emergency Management Agency ("FEMA"), found in 44 C.F.R. § 60.3.[3] However, Plaintiffs may not bring a § 1983 claim for alleged violations of rights conferred by the Code of Federal Regulations. A § 1983 claim is only actionable if the right is secured by the Constitution or conferred by federal statute. *Johnson v. City of Detroit*, 446 F.3d 614, 629 (6th Cir. 2006) (overturning its prior decision that a federal regulation alone

---

[2] 28 U.S.C. § 1232g "prohibt[s] the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons." *Gonzaga*, 536 U.S. at 276.

[3] Plaintiffs assert that the regulations are found at 60 C.F.R. § 60.3, entitled "Flood Plain Management." However, a 60th title to the C.F.R. does not exist. Considering the context of Plaintiffs' argument, it appears that Plaintiffs intended to cite 44 C.F.R. § 60.3, entitled "Flood plain management criteria for flood-prone areas."

may create a right enforceable through § 1983).

Because 44 C.F.R. § 60.3 cannot independently create a right enforceable through § 1983, the Court must consider whether the regulation's enabling statute confers a similar right. *See Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 620 (6th Cir. 2005) (holding that the plaintiff could not pursue a claim under § 1983 for alleged violations of a federal regulation because neither the plaintiff nor the court could point to a specific statutory provision in the regulation's enabling statute that conferred a right relevant to the plaintiff's claim). Thus, the Court must examine 42 U.S.C. § 4102, which charges the Director of FEMA with the authority to

> from time to time develop comprehensive criteria designed to encourage, where necessary, the adoption of adequate State and local measures which . . . will -- constrict the development of land which is exposed to flood damage . . . guide the development of proposed construction away from locations which are threatened by flood hazards, [and] assist in reducing damage caused by floods . . . .

42 U.S.C. § 4102 (2010).

No court has determined whether § 4102 creates private rights. However, courts have consistently held that other provisions of the NFIA do not provide implied rights of action. For example, in *Cruey v. First American Flood Digital Services, Inc.*, another court within this District concluded that the Act's provision in 42 U.S.C. § 4104b did not create an implied right of action for a borrower to sue a third party flood hazard determinant after relying on the third party's flood hazard determination to the borrower's detriment. 174 F. Supp. 2d 525, 528-32 (E.D. Ky. 2001). Furthermore, the Fifth Circuit has held that §§ 4012a(b) and 4104a of the NFIA do not create implied rights of action. *Till v. Unifirst Federal Sav. & Loan Ass'n*, 653 F.2d 152, 161 (5th Cir. 1981); *See also Arvai v. First*

9

*Federal Sav. & Loan Ass'n*, 698 F.2d 683, 684 (4th Cir. 1983) (holding that no implied right of action exists under either §§ 4012a(b) or 4104a of the NFIA).

The courts in *Cruey* and *Till* relied on the factors announced by the Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975), to determine whether an implied right of action exists.[4] *Cruey*, 174 F. Supp. 2d at 528; *Till*, 653 F.2d at 157. Both courts held that the respective provisions at issue did not provide private rights to identifiable people, failing the first *Cort* factor. *Cruey*, 174 F. Supp. 2d at 531-32; *Till*, 653 F.2d at 161. Likewise, after reviewing the legislative history of the respective provisions, the courts found no congressional intent to create a right of action, failing the second *Cort* factor. *Cruey*, 174 F. Supp. 2d at 531-32; *Till*, 653 F.2d at 161. Therefore, the courts held that the provisions did not create an implied right of action.[5]

Turning directly to 42 U.S.C. § 4102, the statute is remarkably similar to the statutes at issue in *Gonzaga* which were found to not create private rights. Section 4102 is devoid of any language expressing congressional intent to create individual rights. Instead, § 4102 concerns only the authority given by Congress to the Director of FEMA to carry out

---

[4] "The four-part test established in *Cort* requires that the court consider: (1) whether plaintiffs are among the class of persons intended to benefit from the enactment of the statute; (2) whether there is any evidence of legislative intent to provide or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purpose of the legislative scheme; (4) whether the action is one traditionally delegated to state law so it would be inappropriate to imply a federal remedy." *Cruey*, 174 F.Supp.2d at 528.

[5] The Supreme Court has overruled the *Cort v. Ash* analysis in *Touche Ross & Co. v. Redington*, 422 U.S. 560 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). Now the focal point for inferring a private cause of action from a statute is whether Congress intended to create a federal right, which may be found in the language of the statute, the statutory structure, or some other source. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). The inquiry does not "require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action." *Id.* However, the application of the *Cort* analysis in *Cruey* and *Till* remains relevant because both courts found no congressional intent within the NFIA to create a private right. Neither *Cruey* or *Till* have been overruled, and their holdings guide this Court's inquiry into whether the NFIA creates private rights that may be enforced through a suit under § 1983.

certain functions. Specifically, subsection (a) authorizes the Director to "carry out studies and investigations . . . with respect to the adequacy of State and local measures in flood-prone areas as to land management and use, flood control, flood zoning, and flood damage prevention." Subsection (b) specifies the scope and extent of the studies that the Director is authorized to conduct pursuant to subsection (a). Finally, subsection (c) commands the Director to "develop comprehensive criteria designed to encourage . . . the adoption of State and local measures" to address the concerns raised from the studies conducted pursuant to subsections (a) and (b). Combined, these provisions "speak only in terms of institutional policy and practice," and do not confer any individual rights enforceable under § 1983. *Gonzaga*, 536 U.S. at 283. Thus, a § 1983 claim for alleged violations of 42 U.S.C. § 4102 fails to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Plaintiffs' proposed amendment to bring such a claim is therefore futile.

Despite the fact that § 4102 is devoid of rights-creating language, Plaintiffs contend that the Fifth Circuit's decision in *United States v. Parish of St. Bernard*, 756 F.2d 1116 (5th Cir. 1983), provides authority for this Court to find that the NFIA does create rights which may be enforced through a § 1983 claim. Plaintiffs cite to the concurring opinion for the proposition that local governments have a duty to carry out the requirements of the NFIA/NFIP, and that citizens may seek redress under § 1983 when local governments breach that duty and cause damage on private land. A review of the case reveals that this is a complete misstatement of Judge Williams' concurring opinion.

In *Parish of St. Bernard*, the United States sued several Louisiana parishes for "violating their contractual and regulatory obligations to adopt and enforce flood control

11

measures consistent with the parishes' participating in the NFIP," which "caused massive flood damage." *Id.* at 1119. The majority held that the parishes did not enter into a contract with the United States to adopt and enforce flood control measures and, thus, could not be liable to the United States on a breach of contract theory. *Id.* at 1121. Additionally, the majority held that the United States could not sue the parishes under an implied right of action theory derived from the NFIP. *Id.* at 1122. "The principle purpose," according to the majority, "in enacting the NFIP was to reduce through the implementation of adequate land use controls and the availability of subsidized flood insurance, the massive and ever increasing burden of federal flood disaster assistance." *Id.* After reviewing the language of the NFIP and its legislative history, the majority could not find congressional intent to allow a private cause of action, either expressly or implicitly. *Id.* at 1123. Ultimately, the majority found that the NFIP "by its terms grants no private rights to any identifiable class and prescribes no conduct as unlawful. . . . " *Id.*

Judge Williams concurred in the majority's holding that a private right of action should not be implied from the NFIP, thus agreeing that the NFIP does not create private rights. *See id. at 1128.* Judge Williams wrote a concurring opinion only to express disagreement with the majority's holding that the parishes did not enter a contract with the United States to adopt and enforce flood control measures consistent with the NFIP. *Id.* Plaintiffs' attempt to construe Judge Williams concurring opinion to mean that the NFIP creates rights enforceable through § 1983 is unavailing for at least two reasons. First, the law of the Fifth Circuit, as seen in the majority opinion, is that the NFIP does not create enforceable private rights. *Parish of St. Bernard*, 756 F.2d at 1122. Judge Williams

12

agreed with this statement of the law. *Id.* at 1128. Second, Judge Williams' opinion specifically addresses the viability of a breach of contract claim against the parishes. *Id.* The opinion does not discuss whether the language of the NFIP creates individual rights for purposes of a suit under § 1983. Thus, Plaintiffs' reliance on Judge Williams' concurring opinion is misplaced.

Plaintiffs also argue that they have a valid § 1983 claim against Boone County because it violated rights secured by the County ordinance adopted pursuant to the NFIA and its accompanying regulations.[6] Plaintiffs reliance on the ordinance is equally unavailing. In order to seek redress under § 1983, the plaintiff must allege that his or her rights secured by the Constitution or federal law have been violated by one acting under the color of state law. *See, e.g., Blessing v. Freestone*, 520 U.S. 329, 340 (1997). At the heart of § 1983 is the notion is that it vindicates rights found in *federal* law. *See id.* Here, although the Boone County Ordinance may have been passed in order to comply with provisions of the NFIA and its accompanying regulations, the Ordinance is not itself a federal law. Therefore, any alleged violations of rights secured by the Ordinance cannot give rise to a claim under § 1983.

Having concluded that Plaintiffs cannot bring viable § 1983 claims for alleged violations of the CWA or NFIA, allowing Plaintiffs to amend their Second Amended Complaint to include such claims would be futile. Therefore, Plaintiffs' Motion for Leave to Amend **is denied**.

---

[6] Boone County, Ky., Code of Ordinances § 151.45 (passed May 15, 2007).

B.   **Defendant Boone County's Motion to Dismiss**

   1.   **The Section 1983 Claim against Boone County fails to allege that Boone County violated a federal right**.

In their second amended complaint, Plaintiffs' have failed to properly state a claim under 42 U.S.C. § 1983. In a § 1983 claim, the plaintiff must allege that the defendant, acting under the color of state law, deprived the plaintiff of a right secured by the federal constitution or laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-51 (1999). Here, Plaintiffs' Second Amended Complaint alleges that Boone County had a "duty under Kentucky law to maintain storm water culverts." The County "breached its duty to the Plaintiffs . . . by failing to maintain or take any corrective action . . . to prevent flooding." Furthermore, Plaintiffs assert that their "damages are a proximate cause of the negligence of the County of Boone."

Plaintiffs are plainly asserting that Boone County deprived them of rights secured by Kentucky tort law by negligently failing to maintain the water culvert. The "mere violation of . . . state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (quoting *Conley v. Williams*, No. 93-5524, 1994 WL 326001, at *6 (6th Cir. July 5, 1994)). In fact, the Sixth Circuit has specifically held that "negligence is insufficient to support a § 1983 claim." *Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006) (quoting *Brown v. Kordis*, 46 F. App'x 315, 317 (6th Cir. 2002)). Having failed to identify any federal right that has been violated, count four of Plaintiffs' Second Amended Complaint must be dismissed as it fails to properly state a claim for which relief may be granted under § 1983.

Plaintiffs also allege that Boone County's inaction "shocks the conscience," which is a test articulated by the Supreme Court to determine whether government conduct amounts to a violation of substantive due process rights secured by the Fourteenth Amendment. *Chavez v. Martinez*, 538 U.S. 760, 774 (2003); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). However, Plaintiffs do not otherwise mention or identify any rights secured by the substantive component of the Due Process Clause in the Fourteenth Amendment. A lone reference to the "shock the conscience" test will not be construed as an allegation that substantive due process rights were violated. Instead, after reviewing the entirety of Plaintiffs' § 1983 allegations it appears that this reference was not intended to implicate any rights secured by the Fourteenth Amendment. Accordingly, count four of Plaintiffs' Second Amended Complaint is dismissed.

### 2. This Court will not consider Plaintiffs' pendent state-law claims contained in Count Five

Plaintiffs' Second Amended Complaint mistakenly alleges that the Court has diversity jurisdiction over this entire dispute pursuant to 28 U.S.C. § 1332 as well as federal question jurisdiction over the § 1983 claim contained in count four pursuant to 28 U.S.C. § 1331. "Under [the diversity jurisdiction] provision, there must be complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). Here, complete diversity is absent because Plaintiffs' Second Amended Complaint alleges that Plaintiffs and Defendant Boone County are all residents of the Commonwealth of Kentucky. Therefore, the Court's original jurisdiction is based solely on the federal question raised in count four, and the Court exercises supplemental jurisdiction over all other claims contained in the Second

Amended Complaint pursuant to 28 U.S.C. § 1367(a).

As 28 U.S.C. § 1367(c)(3) provides, "[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "The Sixth Circuit has held when a court dismisses a claim under Rule 12(b)(6) 'there is a strong presumption in favor of dismissing supplemental claims' which can only be overcome in 'unusual circumstances that must involve some prejudice arising from relegating the case for trial in the state court.'" *Green*, 756 F. Supp. 2d at 834 (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1999)). Here, the Court has dismissed the sole claim over which it has original jurisdiction, which raises the presumption that supplemental claims should also be dismissed. *See id.*

In exercising the discretion afforded to the Court pursuant to 18 U.S.C. § 1367(c)(3), the Court refuses to refuses to exercise supplemental jurisdiction over the pendent state-law claims against Defendant Boone County contained in count five of the Second Amended Complaint; however, the Court will continue to exercise jurisdiction over the state-law claims brought against Defendants Roy and Leann Manning. There is nothing to suggest that Plaintiffs would be prejudiced by having to re-file the state-law claims against Boone County in state court. While Boone County argues that the state-law claims should be dismissed with prejudice based on principles of sovereign immunity, this Court exercises its discretion not to make "[n]eedless decisions of state law" and dismisses the remaining state-law claims against Boone County without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Thus, count five is dismissed without prejudice so that Plaintiffs may re-file their claim in state court if they so choose.

## III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1) Plaintiffs' Motion for Leave to Amend their Second Amended Complaint (Doc. # 31) is hereby **DENIED**;

2) Defendant Boone County's Motion to Dismiss (Doc. # 24) is hereby **GRANTED**;

3) Count four of Plaintiffs' Second Amended Complaint is hereby **DISMISSED WITH PREJUDICE**; and

4) The Court declines to exercise supplemental jurisdiction over the pendent state-law claims against Boone County; therefore, count five of Plaintiff's Second Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

This 15th day of December, 2011.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\Covington\2011\11-42 MOO Denying leave to amend and granting D's MTD.wpd2.wpd